SUNBURY WIRE ROPE MANUFAC-
TURING COMPANY, Appellant,

v.

UNITED STATES STEEL CORPORA-
TION; The Youngstown Sheet & Tube
Company; Detroit Steel Corporation;
John A. Roebling's Sons Corporation;
Bethlehem Steel Company; Jones &
Loughlin Steel Corporation; Union
Wire Rope Corporation; Wire Rope
Corporation of America, Incorporated;
Universal Wire Products, Inc.; and The
Roebling Securities Corporation.

No. 11731.

United States Court of Appeals
Third Circuit.

Argued Jan. 19, 1956.

Decided Feb. 29, 1956.

Edward W. Mullinix, Philadelphia, Pa. (Bernard G. Segal, Charles C. Hileman, III, Philadelphia, Pa., on the brief), Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., of counsel, for appellant.

H. Francis DeLone, Philadelphia, Pa. (Raymond W. Midgett, Jr., Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., on the brief), for appellee Roebling Securities Corp.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Seeking trebled damages under the antitrust laws, Sunbury Wire Rope Manufacturing Company, a Pennsylvania corporation, has brought this suit against several other corporations in the District Court for the Eastern District of Pennsylvania. Sunbury charges that the defendants have participated in a conspiracy in restraint of trade which has destroyed its Pennsylvania manufacturing business.

One of the defendants is the Roebling Securities Corporation, formerly J. A. Roebling's Sons Company. This defendant is a New Jersey corporation which had been registered and doing business in Pennsylvania at the time of the alleged wrongs, but had duly cancelled its registration and discontinued its business in Pennsylvania before this action was instituted against it. It was brought into this litigation by substituted service, complaint and summons being served upon the Secretary of the Commonwealth of Pennsylvania. This was thought to be a proper and effective procedure because, in applying for leave to withdraw its Pennsylvania registration, Roebling had filed with the Secretary of the Commonwealth, as required by the Pennsylvania Business Corporation Law, 15 P.S. § 2852–1 et seq., a document containing the following provision:

"6th. The corporation consents that lawful process against it in any action or proceeding upon any liability or obligation incurred within the Commonwealth of Pennsylvania before the issuance of the certificate of withdrawal hereby applied for may be served upon the Secretary of the Commonwealth of Pennsylvania after the issuance of such certificate of withdrawal."

Roebling moved to dismiss the action on the ground that venue was improperly laid in the Eastern District of Pennsylvania and its consent to suit and service did not extend to this litigation. The court granted the motion and entered judgment for Roebling. The court also undertook to make its action immediately appealable by entering certification of finality under Rule 54(b) of the Rules of Civil Procedure, 28 U.S.C. This appeal followed.

The relevant provision of the Clayton Act concerning venue in antitrust suits is in the following language:

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; * * *." 38 Stat. 736, 15 U.S.C.A. § 22.

In addition, Section 1391(c) of the Judicial Code provides that a "corporation may be sued in any judicial district in which it is * * * licensed to do business." 28 U.S.C. § 1391(c) (1952). It is true that at the time the cause of action asserted in this case is said to have arisen, Roebling was registered in Pennsylvania as a foreign corporation and maintained its principal Pennsylvania office in Philadelphia within the Eastern District of Pennsylvania. But before the present suit was filed, this New Jersey corporation had terminated its registration and activities in Pennsylvania. Therefore, the present choice of forum does not satisfy the venue requirements of the Clayton Act or Section 1391 of Title 28, and this action

cannot be maintained unless Roebling has waived venue and submitted to this kind of suit in the Eastern District of Pennsylvania.

█ For legal analysis of such a problem the obvious starting point is Neirbo Co. v. Bethlehem Shipbuilding Corp., 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167. That case establishes that when a foreign corporation, obeying a requirement of state law, files an actual designation and consent empowering a statutory agent to accept for it legal process issued within the state, its action may amount to an effective agreement to submit to suit, at least on causes of action arising under local law, not only in state courts but also in federal courts with subject matter jurisdiction, despite any defect of federal statutory venue which might otherwise be asserted. The companion case of Oklahoma Packing Co. v. Oklahoma Gas and Electric Co., 1939, 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 447, is to the same effect with one point added. Such consent and waiver may embrace suits which, in addition to being brought in a federal court, assert a cause of action created by federal rather than state law.

We think it is the teaching of these leading cases and a number of decisions of courts applying them [1] that there is no federal rule or overriding federal policy which limits the effectiveness of this type of consent in its application to federal litigation. If the state scheme is to require foreign corporations to submit to all suits filed in any competent federal court within the state and a foreign corporation files an appropriate consent, such facilitation of suability in the federal courts is legally unobjectionable.

█ This means that the scope of the foreign corporation's consent and waiver of venue must be determined as a factual question. In deciding this issue of fact a court will appropriately consider the actual language of any document filed by the corporation with reference to the service of process upon it and will construe that expression of consent in the light of the statutory scheme and requirements it was designed to satisfy. The provisions of the state statute and the corporation's undertaking pursuant thereto may be narrow or broad. They may be in such terms as to indicate or imply that all or some litigation in federal courts is beyond their intended coverage. But no such limitation is inherent in the rule of the Neirbo case. The entire question is a matter of interpreting state legislation and attributing reasonable meaning to corporate action pursuant thereto. We approach this case that way.

Provisions of the relevant Pennsylvania statutes and the language of Roebling's consent, quoted at the beginning of this opinion, make it apparent that Roebling has expressed very general and comprehensive submission to the jurisdiction of courts in Pennsylvania with no intimation that any type of federal or state litigation is excluded. Roebling's certificate of consent was filed pursuant to Section 1015 of the Pennsylvania Business Corporation Law which provides that such an undertaking as to continuing suability shall be filed with every application of a foreign corporation to cancel its registration and withdraw from Pennsylvania. Both the statute and Roebling's certificate state that the corporation shall continue to be suable in Pennsylvania "in an action or proceeding upon any liability or obligation incurred within this Commonwealth before the issuance of the certificate of withdrawal."

█ One question raised here is whether the present suit seeks to enforce "a liability incurred within Pennsylvania." In analyzing the factual situation which the pleadings and supple-

---

1. E. g., Dehne v. Hillman Investment Co., 3 Cir., 1940, 110 F.2d 456; Giusti v. Pyrotechnic Industries, 9 Cir., 1946, 156 F.2d 351; Monroe Calculating Mach. Co. v. Marchant Calculating Mach. Co., D.C.E.D.Pa.1942, 48 F.Supp. 84; Vogel v. Crown Cork & Seal Co., Inc., D.C.D. Md.1940, 36 F.Supp. 74.

mental papers reveal, the district court properly pointed out that in "its complaint in the present case plaintiff claims as damages the total loss of the value of its business together with a loss of profits. These losses occurred in Sunbury, Pennsylvania, within Northumberland County. Hence the cause of action asserted herein arose in the Middle District of Pennsylvania which includes Northumberland County." The gravamen of Sunbury's complaint is that conspiratorial acts of the several defendants have made its operation of a manufacturing enterprise in Pennsylvania unprofitable. Wherever particular wrongful acts of the conspirators may have occurred, the injurious impact upon the plaintiff is said to have been through its business activities in Pennsylvania. Liability for injury thus suffered in Pennsylvania is "liability incurred within Pennsylvania" within the meaning of Roebling's consent to remain suable. Boulevard Airport v. Consolidated Vultee Aircraft Corp., D.C.E.D.Pa.1949, 85 F.Supp. 876. Indeed this language has been interpreted even more broadly than the present case requires to cover causes of action much less intimately related to Pennsylvania than this one. Carlisle v. Kelly Pile & Foundation Corp., 3 Cir., 1949, 175 F.2d 414, followed by the Court of Common Pleas of Allegheny County in Virginia Metal Products Corp. v. John W. Cowper Co., Inc., 1950, 73 Pa.Dist. & Co.R. 293.

There remains to consider whether it can reasonably be implied that Roebling's consent to be sued does not cover a civil antitrust suit in a United States District Court for a district where the defendant corporation is not found, or licensed or transacting business. Again we emphasize that Roebling agreed to remain suable in Pennsylvania in "an action or proceeding" brought to enforce liability incurred by it in Pennsylvania before withdrawal. We can see no basis for implication that the state or the corporation itself meant to exclude all or any federal suits. Indeed, an examination of the entire scheme of the

Pennsylvania Business Corporation Law in providing for proceedings against foreign corporations reveals a purpose to make them suable as extensively as possible. Thus, in qualifying to do business in Pennsylvania, a foreign corporation is required to designate the Secretary of the Commonwealth as its "true and lawful attorney * * * upon whom all lawful process in any action or proceeding against it may be served" and it agrees that "the authority for such service of process shall continue in force as long as any liability remains outstanding against the corporation in this Commonwealth." Pennsylvania Business Corporation Law, Act of May 5, 1933, P.L. 364, as amended, 15 P.S. § 2852-1004(6). Moreover, a related section explicitly provides that the Secretary of the Commonwealth shall accept process issued against a registered foreign corporation "by any court of the United States empowered to issue such process under the laws of the United States." 15 P.S. § 2852-1011, subd. A. There is no need to imply that Pennsylvania had in view a comprehensive submission to federal litigation. That purpose is explicitly stated. And the very next subsection goes so far as to provide that these procedures for the service of process of both federal and state courts may be followed even in the case of a foreign corporation which has not registered so long as it shall be transacting business within the state. 15 P.S. § 2852-1011, subd. B. The intent of the Pennsylvania Business Corporation Law seems rather clearly to be that foreign corporations doing business within the state shall submit to the jurisdiction of federal as well as state courts in all types of cases within their respective jurisdictions.

No different policy can reasonably be read into Section 1015 of the statute which rounds out a consistent scheme of dealing with foreign corporations by providing a procedure for withdrawal of registration. In that section we think the state is simply making sure that withdrawal shall not make it more diffi-

cult to sue the corporation within the state on any existing and unlitigated claims.

Up to this point we think we are in substantial agreement with the district court. However, recognizing that Roebling had consented to be sued in Pennsylvania on such a federal claim as this, the district court concluded that there had been a waiver of venue only with respect to the Middle District of Pennsylvania, where the cause of action arose, and not the Eastern District where the defendant had recently been registered and transacting business. We are unable to agree with this conclusion.

The district court relied upon a provision of the Pennsylvania Business Corporation Law which provides for suit against a foreign corporation in the state courts of the county where the cause of action has arisen. 15 P.S. § 2852–1011, subd. A. But Section 22 of the Clayton Act and Section 1391(c) of Title 28, the controlling federal venue statutes, provide differently and more broadly that a corporation is suable where it may be found, where it transacts business and where it is licensed to do business. Thus, so long as it was licensed to do business throughout Pennsylvania, Roebling was suable under these rules of federal venue in the district courts of both the Eastern and Middle Districts of Pennsylvania, although the focal point of its Pennsylvania business activities seems to have been the Eastern District. Provisions of state law as to the appropriate county for state suit were irrelevant.

After Roebling withdrew from Pennsylvania, it was bound by its express consent to continue to be suable within the state, but no geographic subdivision was expressly designated by statute or expressly approved by the corporation as a more appropriate forum than any other for the enforcement of such continuing liability. Yet, two facts provide the basis for an implication. First, until withdrawal the corporation was sua-

ble in federal courts throughout Pennsylvania. Second, we have already analyzed the statutory regulations of withdrawal as an effort to continue the amenability of the corporation to suit within the state on outstanding liability. In logic this implies suability in the same places and courts as theretofore. Therefore, in the absence of any affirmative indication to the contrary, we think this logical implication is our best guide to what the state and the corporation had in view. Once it is conceded that Roebling waived venue with reference to Federal antitrust suits in Pennsylvania, we think it is the sense of the matter that its waiver of venue comprehended the Eastern District of Pennsylvania.

The judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.